IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| v. | * | Criminal No.: 1:05-cr-00203-TDC |
| **WILLEAM KING, et al.,** | * | |
| **Defendant** | * | |

* * * * * * * * * * * * * * * * * * * *

**MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)
AND SECTION 403 OF THE FIRST STEP ACT**

William King, through undersigned counsel, respectfully moves this Court for an order reducing his sentence to time served and granting his compassionate release based on the "extraordinary and compelling reasons" discussed below, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

## INTRODUCTION

In 2006 William King ("Mr. King") was sentenced to a 3,781-month term of imprisonment (315 years and one month) for multiple counts of extortion, robbery, conspiracy to distribute and possession with intent to distribute narcotics, conspiracy to possess a firearm in furtherance of a drug trafficking offense, and other crimes arising out of a scheme to victimize drug dealers, in violation of 18 U.S.C. §§ 846, 924(o), 1951, 841(a)(1), and 924(c). ECF 83 & 85. Mr. King was ultimately sentenced to 78 months for the predicate Hobbs Act and drug offenses but received an additional 305 years for the firearms offenses as mandated under the statute. *Id.* During sentencing, the Court repeatedly expressed displeasure with the severity of the sentence and mandatory "stacking" of the § 924(c) counts. *See* ECF 111.

1

Mr. King was 35 years old when he was sentenced and has presently served 15 years and one month. During that time, he has missed many significant milestones in the lives of his family, including his daughter's graduation from college. Mr. King has spent years reflecting on his actions and acknowledges the wrongfulness of his conduct. He is ashamed of how he betrayed the public's trust and became the opposite of who he once wanted to be. To turn his life around, Mr. King has spent his time in prison becoming a better person and role model to those around him.

In 2018, Congress walked back the provisions that mandated Mr. King's harsh sentence. If he were sentenced today, he would have received a substantially shorter sentence than the one imposed. Indeed, had his sentence followed the current statutory scheme, it is likely Mr. King likely would have been released by now.

But Mr. King remains incarcerated at FCI Bennettsville. And since March of 2020, the COVID-19 public health pandemic has made it dangerous to be in crowded environments. Federal prisons seen extraordinarily infections rates for the deadly coronavirus. Accordingly, on May 23, 2020, Mr. King filed a written request for compassionate release with the warden of FCI Bennettsville. Although more than thirty days have elapsed since the request was made, Mr. King has not received a decision from the warden. Having exhausted his administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A), he now seeks relief from his enhanced sentence and the risks posed by his continued incarceration directly from this Court.

**STATEMENT OF FACTS**

Mr. King was employed by the Baltimore City Police Department for 13 years following a decorated career and two tours of service in the Army. Between 2004 and 2005, Mr. King and his partner Antonio Murray served as detectives working primarily in the Public Housing Drug Enforcement Unit. During that time, Mr. King and Murray conspired with other individuals to

identify, detain, and then rob drug traffickers while in uniform and armed with service weapons. Mr. King and Murray would then distribute the seized contraband to Mosby and accomplices, pocketing any cash from the robberies and the proceeds from the subsequent sales. There was no evidence Mr. King physically injured anyone while participating in this scheme.

In May 2005, Mr. King was arrested. He had no criminal history prior to his arrest. Mr. King was charged in a 33-count superseding indictment with one count of conspiracy to distribute and possess with intent to distribute narcotics under 18 U.S.C. § 846, one count of conspiracy to possess firearms in furtherance of a crime of violence or a drug trafficking crime under 18 U.S.C. § 924(o), nine counts of interference with commerce by robbery and extortion under 18 U.S.C. § 1951, nine counts of possession with intent to distribute narcotics under 18 U.S.C. § 841(a)(1), and thirteen counts of possession of a firearm in furtherance of a crime of violence or a drug trafficking crime under 18 U.S.C. § 924(c). ECF 49. A jury convicted Mr. King on all counts except one. ECF 79, 83, 85.

At sentencing, the Court had no choice but to impose what was essentially a life sentence. For the predicate Hobbs Act and narcotics offenses, Mr. King was sentenced to 121 months. ECF 85. But under § 924(c), as it was then written, each of the firearm offenses after the first[1] carried a mandatory 25-year term that had to run consecutively. Because of this "stacking," Mr. King was sentenced to 3,781 months – or 315 years and one month. *Id.* But the Court was unequivocally against having to impose such a sentence and would not have done so if not required by Congress. At the hearing, the Court stated: "there's something just fundamentally wrong with this sentence today," "I don't think that there's anybody in this room who thinks the sentence I'm going to have to impose is appropriate" and "this sentence is not proportionate with the wrong". ECF 111 (*United

---

[1] The first conviction for possession of a firearm in furtherance of a drug trafficking offense carried a 5-year term of imprisonment.

*States v. King*, No. 1:05-cr-00203-TDC-1, Sentencing Transcript, at 2-7 (D. Md. June 16, 2006)). Exhibit A.

In 2008, Mr. King unsuccessfully appealed his verdict and sentence. *United States v. King*, 270 F. App'x 261 (4th Cir. 2008).

On July 31, 2014, Mr. King's sentence for the predicate offenses was reduced from 121 months to 78 months pursuant to 18 U.S.C. § 3582(c), as the applicable guideline range for crack cocaine related offenses had been lowered and made retroactive under 28 U.S.C. §§ 944(o),(u). ECF 147. But the rest of his enhanced sentence remains unchanged.

At present, Mr. King has served 188 months. While he remains to be incarcerated, the COVID-19 public health pandemic has impacted FCI Bennettsville.

## BACKGROUND

Congress first enacted 18 U.S.C. § 3582(c)(1) as part of the Comprehensive Crime Control Act of 1984 to serve as a "safety valve" for judges to assess whether a sentence reduction was warranted by factors that previously would have been addressed through the abolished parole system. S. Rep. No. 98-225, at 121 (1983). "This legislative history demonstrates that Congress, in passing the Comprehensive Crime Control Act of 1984, intended to give district courts an equitable power to employ on an individualized basis to correct sentences when 'extraordinary and compelling reasons' indicate that the sentence initially imposed on an individual no longer served legislative objectives." *United States v. Millan*, No. 91-CR-685 (LAP), 2020 WL 1674058, at * 5 (S.D.N.Y. Apr. 6, 2020).

As originally enacted, the statute left sole discretion for filing compassionate release motions with the Director of the Bureau of Prisons ("BOP"), which adopted a program statement governing compassionate release that narrowed the criteria established by the U.S. Sentencing

Commission. *See* BOP Program Statement 5050.49. During the span of more than three decades, the BOP rarely filed motions on behalf of inmates who met the eligibility criteria. The Office of the Inspector General for the Department of Justice concluded in 2013 that "[t]he BOP does not properly manage the compassionate release program, resulting in inmates who may be eligible candidates for release not being considered." Dep't of Justice, Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program* (April 2013), at 11, available at https://oig.justice.gov/reports/2013/e1306.pdf; *see also* Dep't of Justice, Office of the Inspector General, *The Impact of an Aging Inmate Population on the Federal Bureau of Prisons* (May 2015), at 51, available at https://oig.justice.gov/ reports/2015/e1505.pdf ("Although the BOP has revised its compassionate release policy to expand consideration for early release to aging inmates, which could help mitigate the effects of a growing aging inmate population, few aging inmates have been released under it."); U.S.S.G. § 1B1.13, app. n.4 (admonishing BOP for its past failure to pursue relief on behalf of eligible inmates). Heeding this criticism, Congress acted.

Through the First Step Act, enacted December 21, 2018, Congress sought to resuscitate compassionate release by, *inter alia*, allowing defendants to directly petition courts for relief, rather than leaving that power solely in the hands of the BOP. *See* 18 U.S.C. § 3582(c)(1)(A). "[U]nder the amended statute, a court may conduct such a review also 'upon motion of the defendant,' if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if 30 days has lapsed 'from the receipt of such a request by the warden of the defendant's facility,' whichever is earlier." *United States v. Decator*, No. CCB-95-0202, 2020 WL 1676219 at *1 (D. Md. Apr. 6, 2020) (*quoting* 18 U.S.C. § 3582(c)(1)(A)(i)). In other words, "a prisoner must exhaust the administrative appeal process, or wait 30 days, before his claim may be considered" by the court. *United States v. Underwood*, No. TDC-18-0201, 2020 WL 1820092,

5

at *2 (D. Md. Apr. 10, 2020) (citing cases). To grant a petition brought by the defendant, the court still must find that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The court must also consider the sentencing factors set forth in § 3553(a) to the extent they are applicable. § 3582(c)(1)(A).

The First Step Act also walked back the mandatory stacking of offenses under § 924(c). Section 403 amended Section 924(c)(1)(C) so that it no longer requires back-to-back 25-year terms for second or subsequent convictions in every case. Instead, as amended by the First Step Act, enhanced sentencing is only required for a violation "that occurs after a prior conviction under this subsection has become final." § 924(c)(1)(C). In other words, if the Defendant has never been convicted of possessing a firearm in furtherance of a drug trafficking offense, their instant convictions under § 924(c) – no matter how many – will not be subjected to mandatory stacking.

## ARGUMENT

Mr. King's sentence should be reduced to time served, and his compassionate release order, based on the "extraordinary and compelling reasons" presented herein. First, Mr. King is eligible to seek relief directly. Second, the enormous disparity between Mr. King's excessive sentence and the sentence he would face today for the same conduct constitutes "extraordinary and compelling reasons" for a reduction under § 3582(c)(1)(A)(i). In addition or in the alternative, the COVID-19 public health pandemic presents "extraordinary and compelling" circumstances that make Mr. King's continued incarceration inappropriate and high-risk. Under both grounds, a balancing of the § 3553(a) factors all weigh strongly in favor of compassionate release for Mr. King. Mr. King adopts any additional arguments and analysis set forth by his co-defendant, Antonio Murray, in his contemporaneous filing.

### A. Mr. King Has Exhausted His Administrative Remedies

As of the date of this filing, more than 30 days have elapsed since Mr. King submitted his request to the Warden of FCI Bennettsville and the BOP has not filed a motion with this Court on Mr. King's behalf. Accordingly, Mr. King is entitled to bring his motion directly to the Court pursuant to 18 U.S.C. § 3582(c)(1)(A), and this Court is vested with the jurisdiction to rule on the requested relief.

### B. Because The District Court Would Have Imposed A Dramatically Shorter Sentence On Mr. King, Had Today's Statutory Scheme Been In Effect, There Are "Extraordinary and Compelling" Reasons To Order A Sentence Reduction.

This Court and others have recognized that an excessively enhanced sentence under the now-defunct stacking provisions of § 924(c) warrant a sentence reduction under § 3582(c)(1)(A)(i).

> Multiple district courts have reasoned that "the First Step Act's change in how sentences should be calculated when multiple § 924(c) charges are included in the same indictment constitutes an extraordinary and compelling reason under 18 U.S.C. § 3582(c)(1)(A)." The court agrees with this reasoning. The fact that Decator, if sentenced today for the same conduct, would likely receive a dramatically lower sentence than the one he is currently serving, constitutes an "extraordinary and compelling" reason justifying potential sentence reduction under § 3582(c)(1)(A)(i).

*Decator*, 2020 WL 1676219 at *3 (*citing United States v. Owens*, No. 97-CR-2546-CAB, ECF 93 at 4 (S.D. Cal. Mar. 20, 2020)).

Here, the Court imposed the excessive 315+ year sentence on Mr. King solely because it was mandated to do so. But the Court expressed its profound distaste for the enhancement that resulted from the mandatory stacking. Court deemed the sentence "fundamentally wrong" and "not proportionate with the wrong." The Court even indicated its belief that nobody in the courtroom felt that sentence was appropriate. Under the amended statutory scheme, courts today could impose as little as one-day sentences on non- § 924(c) counts in light of the severity of the sentences required by the thirteen stacked § 924(c) counts that Mr. King was facing. Without

question, if Mr. King had been sentenced under the modern statutory scheme, he would not have received at least 300 of his 315+ year sentence.

Moreover, in enacting the First Step Act, Congress eschewed allowing defendants like Mr. King to receive enhanced sentences for "second or successive" § 924(c) convictions that were charged in the initial case. Although Section 403 does not apply retroactively, it supports the "compelling and extraordinary" nature of the disparity giving rise to this petition. Even Congress recognized that first time offenders like Mr. King should not be sentenced to 12 back-to-back 25 year sentences for convictions under § 324(c), especially when the actual underlying offense(s) carry such lesser penalties.

Finally, Mr. King has already served a substantial period of time for these offenses. He has been incarcerated for 188 months; he has served the *entirety* of the original sentence for his predicate offenses *and* the five-year term imposed for the first § 924(c) offense, consecutively. Accordingly, there is substantial and compelling justification for ordering a sentence reduction.

### C. The COVID-19 Pandemic Presents An "Extraordinary and Compelling" Justification For Compassionate Release.

In addition or in the alternative to the circumstances set forth above, the circumstances presented by the COVID-19 public health pandemic make Mr. King's continued incarceration unacceptable and inappropriate. The Centers for Disease Control ("CDC") has noted that "the risk for severe illness from COVID-19 increases with age, with older adults at highest risk." CDC, *Older Adults*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html. Indeed, the CDC reports that 8 out of 10 COVID-19 deaths reported in the United States have been in adults 65 years old and older. *Id.* Mr. King is 51 years old. His age and the

relative heightened risk for COVID-19 constitutes an extraordinary and compelling reason for relief given the spread of the virus within the BOP.

According to the BOP website, 37 inmates and 4 staff members have tested positive for COVID-19 at FCI Bennettsville, where Mr. King resides. BOP, *COVID-19 Cases*, https://www.bop.gov/coronavirus/. While the BOP has made efforts to reduce the spread of the virus throughout the federal prison system, the rate of infection is far higher within BOP facilities than within the community at large, and is continuing to spread at an alarming rate. That rate is illustrated in the graph from BOP set forth below.



Amid this rapidly-unfolding crisis, the universally-recommended antidote is simple: reduce the prison population by releasing those whose continued incarceration is not necessary to protect the public so that correctional institutions can better protect those who need to stay incarcerated.

Here, Mr. King is a high-risk individual living in a high-risk environment. Had he been sentenced fairly and justly, he would have already been released. As the Honorable Judge Theodore Chuang, U.S. District Judge for the District of Maryland has noted, being incarcerated during this outbreak "sufficiently increased the severity of the sentence beyond what was originally anticipated." *United States v. Mel*, No. CR TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020). As argued *supra*, Mr. King's sentence was severe enough – too severe – under ordinary

circumstances. These are exactly the type of compelling and extraordinary circumstances that justify compassionate release.

   **D. The Relevant § 3553(a) Sentencing Factors Warrant Reducing Mr. King's Sentence**

Once a defendant establishes the existence of extraordinary and compelling circumstances justifying relief, courts must consider the relevant sentencing factors of 18 U.S.C. § 3553(a) to determine whether a sentencing reduction is warranted. 18 U.S.C. § 3582(c)(1)(A)(i). Those factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for –
>
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines
> […]
>
> (5) any pertinent policy statement . . . .
>
> (6) *the need to avoid unwarranted sentence disparities* among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Only some of these factors are applicable to Mr. King's case. The Court should consider "(1) [Mr. King's] personal history and characteristics; (2) his sentence relative to the nature and

seriousness of his offense; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants." *Decator*, 2020 WL 1676219 at *4 (citing *United States v. Redd*, No. 1:97-CR-00006-AJT, —— F.Supp.3d ——, —— & n.18, 2020 WL 1248493, at *8 & n.18 (E.D. Va. Mar. 16, 2020)).

Continued incarceration is not necessary to protect the community from Mr. King. Mr. King's lack of any prior criminal conduct, and his good behavior and personal accomplishments during incarceration all reflect his reformation of character and judgment that support a reduced sentence. Mr. King has dedicated himself to becoming an exemplary citizen by embracing the educational and leadership opportunities presented to him. Mr. King has completed over 20 educational courses, including those on anger management and breaking old habits.

Mr. King will be an asset to the community rather than a danger. Mr. King's mother, Carolyn King-Clark, his daughter, Teisha King, and his former Supervisor at FCI Atwater, James Hickman, have all written letters of support to this Court advocating for his strength of character and circumstances for release, attached hereto as Exhibit B, C, and D, respectively. Teisha King writes that although her father has been incarcerated for much of her life, he has consistently made an effort to support her and be there for her even though he was not able to see her graduate from high school or college.

In this case, a reduction or modification of Mr. King's sentence would not diminish the seriousness of the offense, nor would it place the public in any danger. The extraordinary and compelling circumstances presented by the uncontrolled spread of COVID-19, in addition to Mr. King's consistent self-improvement and lack of danger to the community warrant relief from the

unreasonable sentence that the Court was unconstitutionally forced to impose in 2006. Mr. King has been incarcerated for 15 years and seven months out of his 315 year and one month sentence. The time served is "sufficient, but not greater than necessary" to satisfy the goals of sentencing under § 3553(a), and Mr. King respectfully seeks an order reducing his sentence to time served.

## CONCLUSION

Mr. King has demonstrated extraordinary and compelling reasons for compassionate release and asks this Court to reduce his sentence to time served.

Respectfully submitted,

Date: January 7, 2021

/s/ Steven H. Levin
Steven H. Levin (Federal Bar No: 28750)
Rosenberg Martin Greenberg, LLP
25 South Charles Street, 21st Floor
Baltimore, Maryland 21201
slevin@rosenbergmartin.com
Phone: (410) 727-6600
Fax: (410) 727-1115
*Counsel for William King*

4853-2997-3700, v. 1